UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/3/2014
```

PHILIP MORRIS USA INC.,

                Plaintiff,

   -v-

LOS CORAZONES DELI GROCERY INC.,
*et al.*,

                Defendants.

No. 09-cv-9608 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court is the motion of Plaintiff Philip Morris USA Inc. ("Philip Morris") seeking an order of civil contempt against Defendant Fancy Deli & Grocery Corp. ("Fancy Deli"). For the reasons stated below, the motion is granted. Fancy Deli shall pay a compensatory fine of $500 to Philip Morris and a coercive fine of $5,000 to the Court.

## I. BACKGROUND

On November 18, 2009, Philip Morris sued Fancy Deli, among other Defendants,[1] for trademark infringement and other violations of the Lanham Act and New York law. (Doc. No. 1 ¶ 3.) Philip Morris, which owns the trademarks associated with Marlboro tobacco products ("Marlboro Trademarks"), alleged that Defendants sold counterfeit cigarettes that infringed on the Marlboro Trademarks. (*Id.* ¶¶ 4–5.)

Philip Morris and Fancy Deli reached a settlement and, on March 11, 2010, the Court issued a Consent Judgment and Permanent Injunction ("Consent Judgment") enjoining Fancy Deli from further "purchasing, selling, offering for sale, or otherwise using in commerce any

---

[1] The other Defendants, including the captioned Defendant Los Corazones Deli Grocery Inc., are not party to this motion.

counterfeit [Marlboro] brand cigarettes." (Doc. No. 13 ("Consent Jgmt.") ¶ 7.) The Consent Judgment provided that if Fancy Deli breached the injunction by continuing to sell counterfeit cigarettes, it would be liable to Philip Morris in the amount of $500 for the first such breach, with the monetary damages to double for each subsequent breach. (*Id.* ¶ 13.) The Consent Judgment further provided that the Court retained jurisdiction to enforce its terms. (*Id.* ¶ 11.) The Consent Judgment was signed by counsel for Philip Morris and Fancy Deli. (*Id.* at 7.)

On October 22, 2013, Philip Morris filed the instant motion for civil contempt, alleging that Fancy Deli breached the Consent Judgment by continuing to sell counterfeit cigarettes and, moreover, refused to pay the $500 liquidated damages due under the Consent Judgment. (Doc. No. 28.) The motion seeks sanctions in the amount of $25,000 or "an amount that the Court, in the exercise of its discretion, determines to be sufficient to compensate Philip Morris USA." (*Id.* at 11 n.6.) The Court ordered Fancy Deli to respond to the motion no later than November 15, 2013. (Doc. No. 32.) On November 15, 2013, Fancy Deli's counsel filed a letter seeking an extension of the time to respond to November 25, 2013, which the Court granted. (Doc. No. 33.) Defendant did not file an opposition and has not, since November 15, 2013, communicated with the Court.

## II. DISCUSSION

### A. Civil Contempt

The Court is empowered by federal statute to "punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401. The Court also has the inherent authority to hold parties in contempt for disobedience of its orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Where, as here, "contempt is imposed for the coercive or

2

remedial purpose of compelling obedience to a court order and providing compensation or relief to the complaining party, the contempt is civil in nature." *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 115 (2d Cir. 1988). The Court may hold a party in contempt for noncompliance with an order "only if [(1)] the order is clear and unambiguous, [(2)] the proof of noncompliance is clear and convincing, and [(3)] the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (citations and internal quotation marks omitted). Here, all three elements are satisfied.

First, the Consent Judgment clearly and unambiguously enjoins Fancy Deli from further "purchasing, selling, offering for sale, or otherwise using in commerce any counterfeit [Marlboro] brand cigarettes," and provides for the payment of liquidated damages in the event of breach. (Consent Jgmt. ¶¶ 7, 13.) Thus, Fancy Deli was on notice that, if it continued to sell counterfeit Marlboro cigarettes, it would be liable for payment of liquidated damages.

Second, Philip Morris has submitted uncontroverted evidence that Fancy Deli breached the Consent Judgment by continuing to sell counterfeit Marlboro cigarettes. Specifically, Philip Morris submitted evidence showing that: (1) an investigator purchased a package of cigarettes bearing Marlboro Trademarks from Fancy Deli on February 6, 2013 (*see* Doc. No. 29 Ex. 3); (2) this package was sealed and submitted to a testing facility (*see* Doc. No. 29 Ex. 4); and (3) an investigator at the facility determined the cigarettes to be counterfeit (*id.*). Philip Morris also submitted evidence that it communicated with counsel for Fancy Deli about the counterfeit cigarettes and demanded payment of $500 in liquidated damages, that Fancy Deli's counsel advised his client to pay the liquidated damages, and that Fancy Deli thereafter ceased communications with its counsel. (Doc. No. 29 ¶¶ 6–7.) Fancy Deli has not offered any

3

opposing evidence.  Accordingly, the Court finds that Philip Morris has demonstrated, by clear and convincing evidence, that Fancy Deli has failed to comply with the Consent Judgment.

Third, Fancy Deli has not diligently or energetically sought to comply with the Consent Judgment.  According to the uncontroverted evidence, Fancy Deli was informed by its counsel of the counterfeit cigarettes and of its obligation to pay liquidated damages under the Consent Judgment.  (Doc. No. 29 ¶¶ 6–7.)  Instead of paying the damages or disputing that it had sold counterfeit cigarettes, Fancy Deli stopped communicating with its counsel.  (*Id.*)  Furthermore, it ignored the Court's order to respond to Philip Morris's motion, even after the Court granted an extension of the time in which to do so.  (Doc. Nos. 32, 33.)  On this record, the Court finds that Fancy Deli has made no attempt at all – much less a reasonably diligent and energetic one – to comply with its obligations under the Consent Judgment.

For the reasons stated above, the Court finds Fancy Deli to be in contempt of the Consent Judgment.

### B. Damages

It is well established that "imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged."  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004); *see also New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352–53 (2d Cir. 1989).  In imposing coercive sanctions, "the court has broad discretion to design a remedy that will bring about compliance," taking into account "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about [compliance], and the contemnor's ability to pay."  *Paramedics*, 369 F.3d at 657–58 (citation and internal quotation

marks omitted). However, "[i]f the fine is compensatory in purpose, the district court has less discretion." *Id.* at 658. "Compensatory sanctions should reimburse the injured party for its actual damages." *Nat. Org. for Women*, 886 F.2d at 1353; *see also Paramedics*, 369 F.3d at 658 ("[W]here a fine is paid directly to the other party rather than the court, the sanction should correspond at least to some degree with the amount of damages." (citation and internal quotation marks omitted)). If actual damages are difficult to determine, "statutory damages may be useful in estimating actual damages." *U2 Home Entm't, Inc. v. Wei Ping Yuan*, 245 F. App'x 28, 30 (2d Cir. 2007); *see also Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F. Supp. 321, 329 (E.D.N.Y. 1996). The imposition of civil sanctions "may . . . be both coercive and compensatory," but the compensatory component of such sanctions must be tied to actual loss by the injured party. *Paramedics*, 369 F.3d at 658 (citation and internal quotation marks omitted).

Here, the Court finds compensatory sanctions in the amount of $500 to be appropriate. Philip Morris has suffered damages because Fancy Deli's sale of counterfeit cigarettes has eroded the goodwill associated with the Marlboro Trademarks. As in virtually all trademark infringement cases, however, the amount of actual damages cannot be easily determined. Ordinarily, in the case of a Lanham Act violation, the Court would impose damages within the statutory range. *See U2 Home Entm't, Inc.*, 245 F. App'x at 30; *see also Time Warner*, 920 F. Supp. at 329. The Lanham Act provides that a plaintiff whose trademarks have been infringed may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Here, however, Philip Morris already negotiated with Fancy Deli the monetary damages that would result from Fancy Deli's first breach, $500. (Consent Jgmt. § 13.) Although

the damages amounts set forth in the Consent Judgment are liquidated damages, the Consent Judgment states that these amounts reflect a "reasonable endeavor" at "an approximation of the damages that would or might be sustained in the event of a breach." (*Id.* § 13.) Accordingly, the Court takes $500 to be a reasonable approximation of the actual loss Philip Morris has sustained from Fancy Deli's breach and imposes sanctions of $500, payable to Philip Morris.[2]

In addition, the Court will impose coercive sanctions of $5,000, payable to the Court. Two of the three factors articulated by the Second Circuit – "the character and magnitude of the harm threatened by continued contumacy" and "the probable effectiveness of any suggested sanction in bringing about [compliance]" – weigh in favor of a sizeable coercive fine. *Paramedics*, 369 F.3d at 657–58 (citation and internal quotation marks omitted). As already discussed, the harm to Philip Morris from the continued distribution of counterfeit Marlboro cigarettes is considerable and not easily measured. More importantly, it appears that only a very sizeable fine will be effective in securing future compliance from Fancy Deli. Fancy Deli was given a chance to resolve this case by paying no damages, but continued to breach. (*See generally* Consent Jgmt. (settling suit for no damages if Fancy Deli agreed not to breach in future).) Once its breach was discovered, it was given a chance to resolve the breach by paying $500 in liquidated damages, which it refused to do. (Doc. No. 29 ¶¶ 6–7.) Finally, it failed to comply with the Court's Order to respond to Philip Morris's motion, despite being given an

---

[2] Given that Philip Morris has provided clear and convincing evidence of only one instance on which Fancy Deli sold counterfeit cigarettes, it is hard to square Philip Morris's demand of $25,000 in compensatory sanctions with the Consent Judgment, which provides for damages of $500 for an initial breach. That said, Philip Morris may seek the imposition of additional sanctions if it provides clear and convincing evidence that Fancy Deli sold counterfeit cigarettes on other occasions. Furthermore, under the Consent Judgment, Philip Morris retains the right to reopen this litigation upon Fancy Deli's breach and may, if the litigation is reopened, pursue all available remedies against Fancy Deli, not just the liquidated damages set forth in the Consent Judgment. (Consent Jgmt. § 11.)

extension of the time in which to do so.  (Doc. No. 32, 33.)  This pattern of behavior reflects a contempt for the legal process that makes anything but a sizeable fine unlikely to be effective. Normally, in determining the amount of a coercive fine, the Court would take into account the third factor articulated by the Second Circuit, "the contemnor's ability to pay." *Paramedics*, 369 F.3d at 658 (citation and internal quotation marks omitted).  However, Fancy Deli's failure to file an opposition has left the Court with no basis from which to infer its ability to pay, and the absence of a record on that point "should hardly inure to [its] benefit." *U2 Home Entm't, Inc.*, 245 F. App'x at 30.  On the basis of the available record, the Court finds that coercive sanctions in the form of a $5,000 fine is appropriate.

### III.  CONCLUSION

For the reasons stated above, the Court finds that Fancy Deli is in civil contempt of the Consent Judgment entered on March 11, 2010.  Accordingly, IT IS HEREBY ORDERED THAT Fancy Deli shall (1) pay Philip Morris $500 as a compensatory sanction for this contempt and (2) pay the Clerk of the Court a fine of $5,000 as a coercive sanction.

IT IS FURTHER ORDERED THAT Fancy Deli shall make both payments no later than October 10, 2014 or, if it cannot do so, file a letter with the Court by that date explaining why it cannot make payment and proposing an alternative payment schedule.  Failure to timely comply with this Order will result in the imposition of future coercive sanctions in amounts considerably higher than those imposed here.

IT IS FURTHER ORDERED THAT Philip Morris shall serve Fancy Deli with a copy of this Order and file an affidavit of service no later than September 8, 2014.

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 28.

SO ORDERED.

DATED:      September 2, 2014
            New York, New York

                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

8